Case number 25-17-26, Daniel Paris v. Macallister Machinery Company et al. Argument not to exceed 15 minutes per side. Ms. Eakins, you may proceed for the appellants. Thank you. Good afternoon and may it please the Court. Carla Eakins on behalf of Appellant. We're here for two reasons. One, related to Mr. Paris' claims against Macallister. And the second, with respect to his dismissal of the claims as to the union. With respect to the Macallister claims, appellant raises three main points. First, the district court improperly collapsed three separate questions into one. The court treated the initial notice, protected activity, and the ultimate entitlement slash certification issue as one issue that rose and fell together, which it did not. Second, Mr. Paris created at least a jury question with respect to the notice and the protected activity. Mr. Paris reported that he was mentally distraught and having an anxiety attack. HR itself responded that FMLA could apply. And then two days later, Mr. Paris asked how he could request FMLA for his medical condition. That is enough to get to a jury on retaliation. Why would I get to the jury? As I understand, he inquired as to how to file the claim. And the company responded with a form or some papers asking him to fill out and submit the claim, which he never did. And if he didn't do that, it would seem that he really wouldn't have a claim in that regard. Well, Your Honor, respectfully, appellant would have to disagree with that just under this court's precedent under Render v. FCA and Millman v. Feiger and Feiger. The issue is of the request and not of the entitlement to. The entitlement is what would have been decided or gotten into, if you will, at some later point. But the initial request was made for the entitlement to come later on. So I think what we're trying to protect is that you've asked for FMLA and now within a few weeks they fire you. You don't even get to that point. He didn't ask for FMLA, I think, is the issue to Judge Clay's question. He asked for information relating to potential leave and never made – I mean, correct me if I'm wrong – he never made what we would call a formal or procedurally proper FMLA request. Do you agree at least with that much? I would disagree only because HR itself identified his request as one related to something that FMLA would apply to. I think that's the best evidence is that the defendant itself said, you're having these issues, you're reporting them to us, after his boss basically stomped on his foot, he has a panic attack after all of these other issues that are underlying. And then he comes and says, I have a problem. He sends his email. HR says back, you might want to look into FMLA. I'm paraphrasing. And then at that point he then inquires what he needed to do for that. And if he's received the paperwork, then obviously he's made the request. I don't think that it was supposed to be that nuanced with some magic words that he's had to say. Well, I think the procedure matters here because as I read Millman, it makes a difference that under the statute and regulation, there's a pretty formalized, retriculated scheme for how you are to go about requesting FMLA. And I think Millman a number of times refers to either a formal request or things along those lines. And it's only through following those particular procedures that the employer is on proper notice, that the employee may need leave. And so what I hear your argument doing is moving kind of the zone of protected activity from an official FMLA request that's procedurally proper to other informal solicitations of information. And that's where I'm having trouble kind of extending Millman that far. Well, I think it goes back to what is it? I mean, he specifically uses the words. I mean, we're talking about magic words if we don't have that requirement. But if you're talking about did they understand that you were requesting it, yes, they did, because they sent him the paperwork. If that's what we're here to protect, we don't even get to that point. Because within a few weeks, and you have to realize the context of what we're in. We're in the holidays. Right? So it's December 19th. You follow up on December 21st. You come back on January 11th. They fire you. I mean, at that point, you're off for a few days. And these things are not in the records. It's the defendant bringing this motion saying as a matter of law, we're entitled to this. But they didn't let the record develop to that point. But I think his request was explicit that that's what it was for because that's why they gave him the paperwork. Especially, well, could a jury determine that? Yes, because the defendant itself recognized that what he was asking for would be covered. And it's the defendants as the employer telling you what benefits you're entitled to. Tells him. He then comes back and asks for the paperwork, too, which suggests that you're going to use it. I guess I'm not understanding what is it that we're saying that we're going to open this up to everybody when you already are in the narrow lane of FMLA requests that he's made under the Sixth Circuit precedent. I mean, I think that he— You know, the problem is not everybody who considers making an FMLA claim decides to do so or follows through with it. And he inquired as to the procedure. The company gave him the paperwork and perhaps some information and asked him to provide it or to submit his claim as soon as he could. And he simply never did, which would suggest he wasn't about the business of filing such a claim. Wow. What's incorrect about that way of looking at it? Well, when you say he never did, it's because he got cut short of that because when he makes the request, they fire him. There's not—I mean, putting it in the context of an employee who has said— Well, how much time elapsed from when he requested the information until the date of his termination? So the 21st, again, holidays, just giving Christmas and New Year's as an actual holiday. I don't know when the holidays come, but what were the dates? The 19th is when he first reaches out. Oh, what month? December. And then the 21st is when— When was he terminated? January 11th. And when did he receive from the company the forms that they asked him to return? The 21st. Of December. Yes. I mean, the practical reality is what we're talking about is that you have to—he had not gone to the doctor yet, so you have to—FMLA, you're going to have to make an appointment. It's the holidays. I mean, there's no suggestion that he was never, ever going to fill it out or that he admitted, oh, no, I changed my mind or anything of that nature. The question is you have gone to your—you went on December 19th and told them that this is going on after I get assaulted by my boss. This is what happened. Then two days after they give you the information, they tell you that this is available to you. You then come back two days later and specifically request information related to FMLA, and FMLA forms are then provided to you. Again, we're talking maybe 10 business—10 actual days in office. I'm just being generous. Well, he also has the problem that he doesn't seem to have the evidence to substantiate that he qualified under FMLA by having a serious health problem because he never sought medical attention. And you can't substantiate a serious health problem with no medical treatment or documentation. Well, I think that that's the difference between retaliation underlying and the interference claim, if you will. So if in a discrimination case the same situation happens, you report discrimination. It may not have happened to you at all, but the fact is you came to your job and you told HR and you told them I was discriminated against, this such and such happened, and then they fire you two days later before ever having a chance to substantiate and get all of that. And that's what I think render is about. Let me ask you this. What was the serious health problem that he would have presented had he done so? Well, I mean, if he has a diagnosed issue, this is what I'm saying. So you go to the doctor and they give you a note. You're diagnosed with anxiety, depression, PTSD. You come in and you present that. I mean, the thing is the company doesn't normally handle, and certainly McAllister, probably not going to handle their... But you're not answering my question. What is the serious health problem that he would have submitted or documented had he done so? That's what I'm, anxiety, depression, potential of PTSD related to work. Mental health, psychological problem. Yes. Okay. Did he ever obtain any treatment? For the moment, forget about whether he submitted the proper information to the employer. Has he ever subsequently been treated for mental health or psychological problems? Outside of the record, are you asking, or just from what we have at that time? Outside the record, as a matter of fact, has he ever been treated for psychological problems? I can't answer that. I'm not sure. Well, how can you bring this claim here, predicated on him having a serious health problem, and you have no idea if he ever took steps to substantiate such a problem? Well, again, we're going to what happened in time. None of that ever gets to develop because he gets fired in a few days. Yeah, but if he was ill with mental health problems, you would think he'd pursue that even if he was terminated from his employment. And we don't know anything about him having a health problem. The employer didn't know anything about his having a health problem. He just inquired about FMLA, right? Yes. I mean, I think to your point, you're raising two different issues. Well, whatever they are. But, I mean, the answer to all the questions about the employer's knowledge is, did I state that correctly? And I think the answer is yes. The employer knows that he requested FMLA. But that's all the employer knows, right? Correct. Agreed. So you're claiming that the FMLA was violated by that, that the firing was because he asked for the information? Protected activity. Correct. Like I said, FMLA interference, I agree, relies on the serious mental health. Retaliation does not. It relies per render on the requesting of the making of the protected activity, which is asking for the leave and them giving the information and the employer understanding that. And so at that point, we don't have to conflate whether or not he actually had a serious mental health issue. We don't know that because, in the record, it never gets to that point. He gets fired before anything else develops. And to your question, Judge Clay, I think that part of what was happening is it was caused by work. If it's then relieved because you get fired, it is what it is. I don't know that. But I think to the relevant question of what you're asking is, he got assaulted by his boss that same day. They had an altercation where he stomped on his foot to check to see if he had a steel-toe boot on. And with a history of other things that were happening all up until then, plenty of people have work-related stress, anxiety, PTSD, emotional issues, and all of those things. The point is here that he never gets to that point. He did make a request. He had protected activity under render because he did. They were aware that he was requesting FMLA leave and that there was a potential of him leaving at that point. The issue never materializes because he gets fired within a few days. And that's what the claim is about. Does a person engage in protected activity if after an employee orientation session they're walking down the hallway and say to the HR director, can you shoot me over just some information about the leave policies of the company? I think that's a tougher question. I don't think that's what we have here. I think we have him complaining, him asking for grievances to be filed, him telling them they know exactly what his problem is and it's with the people who have been causing him grief every single day. And the day of this happening is an assault. He then emails and says this and to the point that the employer understands and says here's a solution for you, FMLA. At that point, of course, they're on notice, they know, and they know that there's a reason for it and that that reason is related to work. I think you've got to double whammy here because it's not just FMLA for something that happened outside. It's FMLA because I got assaulted by my boss. And so that's what we're protecting because it never gets to any of the questions you all are asking, does he have a serious mental health issue. When you say he got assaulted, I understand he stepped on a man's toe to see if he had a steel-toed boot on. That doesn't amount to, and he's checking on his employee for safety reasons. That doesn't amount to an assault, does it? That's the employer's frame. I think if you're looking at it in a light most favorable to the plaintiff, he didn't just go to, he'd been working there for many years. This is not a new employee. He's been having problems with Mr. Israel this whole time, and then all of a sudden, it's not just, I think, if he did not have on a steel-toed boot, he would have broken his toe. So, yes, I do think that it was more violent than perhaps it's being understood from the employer's side. But looking at it in a light most favorable to the plaintiff, would a jury think that after something like that happens, we're just having issues with one another that are, we're speaking. We're having verbal issues. And now somebody has taken it to the level of putting their hands on me, stepping on me, stomping on my toe that could have broken my toes if I wasn't in compliance. That's not the way we check. And so if that's what we're going to say is okay, I don't think that that's the standard that we want to be setting. But that's what caused my client to go in and say, this has gotten to a point where I can't take this anymore. And we are just asking that if you view the facts in a light most favorable to my client, which we must, not that he wins. You might want to wrap up. I've been looking at the stop here, and I was wondering, I was going to ask about the time. But that he gets at least the chance to say, would a reasonable person think that I don't want to be assaulted by my boss, I need to take some time off, they send me FMLA papers, and then fire me within a week or so of working days over the holidays. Thank you. Thank you very much. Good afternoon. May it please the Court. Chris McCullough on behalf of Appellee Defendant McAllister Machinery. Before getting into the legal issues, I'd like to emphasize a couple of factual points that are undisputed. Appellee Defendant is in the business of selling and servicing heavy machinery. The plaintiff, Daniel Paris, first started having performance issues in his role as a service technician in June 2017, when a customer complained about his work and asked that McAllister assign a different technician to perform the duties for that client. Thereafter, during 2017 and 2018, Mr. Paris received at least seven disciplinary warnings and performance counselings. These issues are described at pages four to seven of our brief. Eventually, after these disciplinary actions, McAllister issued Mr. Paris a final warning and a last chance agreement on October 31, 2018. The last chance agreement stated Mr. Paris could not have any further violations of McAllister's policies or he would be terminated. An important point regarding the last chance agreement is that Mr. Paris' labor union was there representing him throughout that process. Ultimately, Mr. Paris violated the last chance agreement multiple times and McAllister terminated his employment in January 2019. I'm not going to list all of these violations. There were many, but they encompassed November and December and January, so both before and after this conversation about his potential FMLA. Turning to the legal issues involved in this matter, first McAllister agrees and adopts co-defendant IUOE's arguments on the Labor Management Relations Act claim. As for Paris' other claims, Mr. Paris is alleging that McAllister wrongfully denied him FMLA and retaliated against him because on December 21, 2018, nearly two months into his last chance agreement, he inquired about taking FMLA leave for anxiety after he had a disagreement with one of his managers. Both of these claims fail. His FMLA interference claim fails at the third element because he was not entitled to FMLA leave as he did not have a serious health condition. It is undisputed, as I believe the bench picked up on, that Mr. Paris never saw a physician for his alleged anxiety. And when McAllister asked him to complete paperwork that would help it determine whether he had a serious health condition, Mr. Paris did not respond. McAllister's FMLA paperwork specifically asked him what the duration and the frequency of his leave would be and whether the leave would be continuous or intermittent. These are inquiries that are explicitly permitted under the FMLA regulations, and the Novak case cited in our brief addressed this exact circumstance and found that the plaintiff's interference claim failed at the third element because the plaintiff did not respond to the employer's inquiries. Mr. Paris' interference claim also fails at the fourth element because he did not give McAllister notice that he intended to take FMLA leave. FMLA Regulation 29 CFR 825.302C addresses the notice issue where it says that an employer should inquire further to obtain the necessary details of the leave to be taken. Additionally, the Mikan case cited in our brief addresses the notice issue as that case found that the plaintiff failed at the fourth element because he did not respond to the employer's inquiries about his medical condition. I'd also like to point out that Paris did not challenge the district court's finding that he failed to meet the fifth element of his interference claim, so his claim also fails on this basis. Lastly, his interference claim fails at the pretext stage. To establish pretext, plaintiffs must show that the defendant's reason had no basis in fact, did not actually motivate the termination, or that the employer's reason was insufficient to warrant the termination. Mr. Paris' brief does not provide any argument on these three issues. As for retaliation, this claim fails variously because Mr. Paris did not engage in protected activity. There's no causal link between any protected activity and his termination, and because Mr. Paris cannot establish pretext. As for protected activity, this fails because Mr. Paris did not request FMLA leave. Again, he never saw a physician and never had the FMLA request form completed by his physician. However, he did ask for FMLA information, and you would not deny that that could constitute protected activity, would you? I would deny that that constitutes protected activity. Asking for a form is different than getting your physician to certify that you have a health condition and actually coming forward with... We're not talking about whether he actually had the condition or not, but if there's an initial inquiry as to the requirements to be satisfied to submit a claim, if an employee could be retaliated against or somehow mistreated for that, then that would discourage potential applicants for FMLA coverage from coming forward. They would have protection to come forward and make an initial inquiry, don't you think? Judge, I do have to disagree with that. The analogy... I think you're wrong about that. Then you would look to whether there was sufficient indication in the record to show that there was a connection between that request and the termination, correct? I missed the first part. Okay. Assuming you're wrong about that, there would still be a long way to go to draw a conclusion that there was a connection between his requesting FMLA information and his termination. There has to be a causal connection. I agree with that point, Your Honor. And Mr. Parris's long history of his disciplinary action, they prohibit him from establishing causation. He had two years of disciplinary problems. He was even given the benefit of a last chance agreement and violated the last chance agreement. The company did not terminate him upon the initial violations, but after several violations, even after his inquiry about FMLA, then it decided this is not somebody who we can retain. Your point of blind would be there would be insufficient evidence in the record of a causal connection to his termination, a causal connection between his request for FMLA information and his termination for him to establish his case ultimately. I agree with that. Can you give me something to hook onto for this proposition that merely requesting informally information about FMLA is not a protected activity? You heard my questions to the other opposing counsel. That's where I'm coming from. I think there's a difficult line drawing problem, potentially, if we take this outside the context of a formal request as contemplated by the statutes and regs. So where are you drawing that it cannot be enough to merely solicit initial information about FMLA generally? Well, I can think of an example where an employee asked for information about FMLA, FMLA benefits, when they have no intention of applying, they just want to know what is the company's policy. In that situation, they're asking about the policy. How does the policy apply to employees? They are not asking for leave. They are not substantiating their request with any medical information from their physician. And here in this case, Mr. Parris never saw a physician for his alleged medical condition. So there could be somebody who requests at the very outset of their employment that I would like to know what the process is without having an intention. That's why the regulations allow the employer to inquire further. They specifically allow to ask about the duration of the leave. Will it be intermittent? Will it be continuous? And Mr. Parris never got to that point. He never followed through. He never completed the form. He was attempting to save his job by throwing a wrench into the mix as he saw that the time was near for him to be terminated. Thank you for your time. Thank you. Do we have any rebuttal? Briefly, I didn't know if I had time. We have a co-defendant. Oh, that's right. Five minutes. Oh, I'm sorry. Okay. Good afternoon. May it please the Court. Jacqueline Zielinski on behalf of International Union of Operating Engineers, Local 324. I'll keep it brief. The district court's dismissal of appellant's claims against the union should be affirmed for two independent reasons. First, appellant has waived appellate review of the dismissal by failing to actually develop any substantive argument directed at the district court's decision. His appellant brief does not even identify any kind of real error other than just a simple disagreement with the outcome. Indeed, today it has not been addressed at all by appellant. That failure alone should be considered a waiver. Second, even if we do reach the merits, the district court properly dismissed the claims based on appellant's failure to plausibly allege that the union's conduct was arbitrary, discriminatory, or redundant in bad faith, which is the governing standard. Because plaintiff failed to satisfy those basic pleading requirements, as to his federal claim, the district court properly declined to exercise supplemental jurisdiction over the remaining state law claims. So beginning with waiver, the district court issued a detailed written opinion analyzing appellant's many pleading failures. However, in his appeal, in the appellant's brief, and in today's oral argument, there's no meaningful challenge to the district court's dismissal of the union. The union was not listed in the civil appeal statement, his request for oral argument, his statement of issues for review, or his requested relief. He only refers to McAllister machinery and the summary judgment order. The entirety of appellant's arguments related to the union are in a quick two pages at the end of the 25 page appellant brief. And even in those quick pages, appellant does not identify any actual error in the district court. Again, just a simple disagreement with the outcome. So issues mentioned in such a perfunctory manner constitute waiver. And even assuming we reached the merits, dismissal of the duty of fair representation claim was proper based on the amended complaint not being well-pled and its failure to state a claim under 12b6. Under well-settled law, the union breaches its duty of fair representation when its conduct towards a member is arbitrary, discriminatory, or done in bad faith. The district court correctly found that the appellant failed to adequately plead facts that the union's conduct was any of those things. In its dismissal order, the court addressed the appellant's theory that the union failed to grieve his demotion. That claim failed because it didn't plead any facts showing that he actually requested a grievance, who he spoke to, when he spoke to them, what he said, or how the union responded. Does the record show that the union ever contested that the violations that led to the last chance agreement were sufficient to support a last chance agreement? That question was not asked of the union. However, I can say affirmatively that in the context of union representation, a last chance agreement is often a success that is normally a desirable outcome because it's usually the last chance agreement or immediate termination. So that, to me, is signs just from a labor context that this was a favorable outcome. I wasn't part of that meeting. This was a motion to dismiss before any discovery was done on the union, rightfully so. And from my understanding, it was that or immediate termination. So to answer your question, that inquiry was never made. So the alleged failure of the union to grieve the demotion, the district court determined that that plaintiff did not plead any facts to show that that rose to the level of a breach of duty of fair representation. In his complaint, and then again in his amended complaint, and then again in the motion for reconsideration, there was nothing to identify the circumstance or the context around the demotion. And a well-pled duty of fair representation claim requires actual facts that connect to actual union conduct, and that just simply wasn't present here. To address the termination allegation, so the district court also addressed the allegation that the union violated its duty of fair representation by failing to investigate or file a grievance after his ultimate termination a few months later. That failed for the same reasons. It was not sufficiently pled. Appellant's amended complaint itself admits that the union investigated the termination when he admitted that the union obtained a list of his many, many infractions that violated that last chance agreement. That fact affirmatively shows that the union's conduct was not arbitrary, discriminatory, or done in bad faith. It actually shows that the union took steps to understand why McAllister terminated his employment pursuant to that last chance agreement. And the district court correctly found that the appellant did not sufficiently allege that the union's conduct related to the termination was arbitrary, discriminatory, or done in bad faith. Finally, I'd like to address the last chance agreement because I do believe that it is most fatal to... I do see that I'm out of time. I apologize. Well, you can go ahead. I will wrap it up. So, in summary, appellant's amended complaint described an employee who was dissatisfied with workplace events and then ultimately dissatisfied with being terminated. That dissatisfaction does not rise to the level of a duty of fair representation claim against the union. For all these reasons, I would request that the district court's dismissal be affirmed. Thank you. All right. Thank you very much. Thank you. Just briefly, with respect to the union, I want to address that just quickly. Rule 8 does not require fact pleading. The fact that they keep talking about facts is part of the issue. Swerkowitz was very clear. We do not have to plead a prima facie case. We never got anywhere with it. That's why I didn't spend that much time on it. We had a whole summary judgment record that developed with McAllister, but the union was out well before, and I think that's why they're talking about the waiver. But we had to wait. Actually, we did file an appeal, realizing we had to wait until the entire case was gone. And so then when it finally all went, that's why the union went. So I understand that they might have been surprised that they were included, but we had to wait until we had a final judgment. It went out at the pleading stage. Again, you don't have to plead a prima facie case. The problem with last chance agreements is that if you breathe wrong, the wrong way, you're out. Of course, it's preferable to losing your job, but the whole point is, and I think the strongest point for Mr. Parris is not that they, which they didn't, they didn't do a lot of things to help him along the way, but they told him basically keep your mouth shut, and now that you've spoken up, now we're going to have more problems, and then failed to grieve at all his termination. You don't have to plead a prima facie case. What do you have to plead? That there was a violation, bad faith, all the things under VOCA versus SIPES, Ruzicka versus General Motors, that there was a breach of the duty of fair representation, the conduct was arbitrary, capricious, or in bad faith. And that's what he did. We never got any further than that because it all ended. When the case gets dismissed immediately on the pleadings, there's no factual development. I mean, those things just happened. So whether or not it was right for them to not grieve it, we don't know. But it's very basic. He was fired. They did not file a grievance for him. He's thinking that they violated their duty to represent him. End of story. So I think that that part was notice pleading under Rule 8, and not having to go through all of these factors and plead facts and do all of these things, I don't think that that's what we are here for at the very beginning of the case. The point is, do you understand what he's saying? Yes, you do. You told him that by speaking up, he was making it worse for you. And then you did nothing. You all got equipment and all these other things. We amended the complaint. They got equipment and things that kept them there. They would wait until people got until five years in when he finally vested, and you fired them right before that. All of these things he's saying, they're colluding together. And he's saying in his complaint, we should have been able to get at least have a factual development on that where you just completely let the claim go. With respect to McAllister, it seems like they're saying that both, he clearly mentions FMLA. Not required to do it, but it comes up. And the reason is 29 CFR 825.302c. The employee notice is sufficient if it gives the employer sufficient information for an employer to reasonably determine whether the FMLA may apply. So he actually does that. He sends this email, and the employer says back, well, this sounds like it might be covered by FMLA. And that was all that was required for notice. Is it that it may apply? Not that it applied. That's a separate determination. That is the interference claim. I understand it's weaker. The retaliation, I don't think you have to go through all that because that's not the point of whether you had underlying serious mental health condition and all of those things. He never did get to that. They short-cutted that process by firing him right after the holidays. There were post-request disciplinary infractions cited by the employer that occurred between December 21st and January 11th, whatever it was, that they cited as a basis for the termination. You said, do I dispute that? We dispute that they're valid. I mean, my client made very clear. Sorry, you have limited time, so I'm trying to dispute it. What evidence of pretext other than temporal proximity do you have with respect to those violations supporting the termination? The escalating discipline. The fact of putting him on a last-chance agreement. He has this FMLA-triggering event. Termination a few weeks later. Shifting explanation for his discharge. At first the boots was included as part of the discharge, and then it wasn't. All of those things together, I mean, I think the whole point that temporal proximity alone is not sufficient is that we should have other evidence that supports it, and I think that you don't want it to just be the only thing. It's certainly, in our view, again, light, most favorable to plaintiff, not the only thing. But at the same time, if it's so clear and nothing else happens in the meantime, what else happened in the meantime? So he was such a bad employee. He was great for however many years. He said that things were just continually getting worse. You finally come to them and say, I can't take this anymore. And then they say, you know what? The way you're saying I can't take this anymore sounds like an FMLA claim. That's serious. So at that point, that's why we believe clients should be able to go to a jury on these claims. Thank you. Thank you. And the case is submitted.